Good morning, ladies and gentlemen. Our first case for argument this morning is Doe v. Burke. Ms. Chenevert. Good morning, and may it please the court. I'm Assistant Attorney General Caitlin Chenevert, and I represent the Defendant's Appellant's Cross Appellees. In May of this year, this court issued its decision in Walton v. Neils. Before we get into the merits of this, I'm wondering why the briefs all use Jane Doe as the name of the plaintiff when her real name was freely used in public at the trial. I believe that on appeal before this court, plaintiff's counsel filed a motion to proceed anonymously. But I'm asking for reasons, right? This name is already in the public domain. Why should we proceed as if it were not? Your Honor, standing here at this moment, I don't believe that I have an answer to that question. I would be happy to provide a supplemental motion. Again, I would be happy to submit a Rule 28J letter, a supplemental briefing, if this court would... As I say, if we require a supplemental briefing, we will let you know. In this court's decision in Walton v. Neils, which was issued in May of this year, it affirmed the District Court's grant of summary judgment to a defendant prison official who an inmate had claimed had engaged in a consensual sexual relationship with him in violation of the Eighth Amendment. Walton held that evidence of an inmate's consent is relevant in an Eighth Amendment custodial sexual assault case. As a result, consent must also be relevant in Eighth Amendment failure to protect cases involving the same conduct. Walton has an effect on this appeal in two important respects. First, because Walton establishes that evidence of an inmate's consent is relevant in Eighth Amendment custodial sexual assault cases, the District Court's exclusion of that evidence based on its conclusion that evidence of consent is never legally relevant was incorrect, warranting a remand for a new trial. Second, Walton supports... I'm not sure that's enough. The critical question, it seems at least to me, is whether the record would permit a reasonable jury to find that the plaintiff consented, in fact. Now, would it so permit? Certainly, yes, Your Honor. The record evidence would allow a jury to reach that conclusion. Based on one hearsay shred in the Hicks report? No, Your Honor. Is there other evidence? It's not solely based on that evidence, Your Honor. What else is there? So there was also evidence in August of 2017 when ISP was conducting an investigation into the matter. Doe was interviewed by ISP at that point and was asked about the relationship with McLeod. And during that time, she at first initially stated that it was a consensual relationship. So there certainly is evidence that could be introduced to the jury that would allow the jury to assess whether or not this was actually a consensual relationship. Separate and aside from that particular aspect of this case, though, Walton established that a defendant's subjective belief remains relevant. And so here, Sexton received the report in the Hicks report that there was a possible relationship between Doe and McLeod. And based on the information in that report, his testimony during his offer of proof was that he believed that the relationship was consensual. And he also testified that that belief influenced the level of danger that he believed that Doe was in, as well as how it was that he conducted his investigation. So had the jury heard all of the evidence as to Sexton's—all of the information contained in the Hicks report, not just the redacted portions, but as well as the portions that led Sexton to believe that it was a consensual relationship, and then allowing him to explain his belief as to the level of harm that he believed Doe was in, the jury could have then fully and completely assessed whether that belief was credible, and then—ultimately then—whether the actions taken by defendants rose to the high level of deliberate indifference. And so for that basis, the district court's exclusion of that evidence, based solely on the belief that as a matter of law under the Eighth Amendment, that evidence could not be admitted, that was incorrect. And again, so a new trial is warranted to allow that evidence to be introduced to the jury. I would also note that in the reply brief, Doe argues that even if it is relevant, it would have to be excluded under Rule 403, but that balancing analysis would have to weigh still in favor of allowing this evidence to be entered. Again, as part of Doe's claim against Burke and Sexton here, she has to establish the subjective element of the Eighth Amendment claim, meaning that they actually perceived a serious risk of harm to her. And so their ability to defend against that claim rests on their ability to explain what they knew and what they believed that meant as far as the risk of harm to her. I would have thought your strongest use of that evidence might have to do with the issue of punitive damages. It's certainly relevant in that respect as well. Because this looks to me like shreds of evidence of consent in an inherently coercive situation. But when a plaintiff seeks punitive damages, a whole lot of other mitigating circumstances become relevant. Correct, Your Honor. And as we argued in our brief, the consent evidence is relevant not only to liability but also to this issue of damages and particularly, as you noted, to the issue of punitive damages and whether the jury may assess that no punitive damages were warranted here. We can agree, can't we, that sexual relationships with an inmate are criminal whether there's consent or not, correct? Correct, yes. And I'm wondering how your theory would play out, for example, in a school setting where a teacher or coach has sexual relationship, maybe completely consensually, but with a teenager who cannot legally give consent. How does the evidence of consent being relevant play out in that kind of a case? In that sort of a situation, Your Honor, that may be closer to, for example, the Doe v. Oberweiss case that the district court relied on here, where there was a legal reason that I believe in that case it was an employee could not consent with the employer. And in that sort of a situation, then perhaps it is more appropriate to analyze state or federal statutes that would prohibit consent and then import that information into the particular. Why is this different? This is different because as explained by this court in Walton, in the Eighth Amendment context, while criminal state and federal statutes and criminal statutes may be relevant, and of course in Walton this court analyzed all of those statutes, but ultimately determined that for purposes of the Eighth Amendment, it could not create a per se rule that consent was never relevant. But you would agree with me that the evidence of consent in Walton was light years ahead of the evidence of consent here? It was certainly different. That's correct. But again, even if the evidence was different, it was still a question that defendants raised this question. It had evidence to state that Sexton believed that this was a consensual relationship. There's also clear evidence, and as far as I am aware, undisputed evidence, that as soon as upon learning that information, Sexton reported that information to his superiors and was told to gather more information. So certainly here there was evidence that defendants had wanted to present to the jury that there was a belief that this was a consensual relationship and allow the jury to assess that evidence and determine whether it was credible, and if so, whether that could go to liability or to potential damages. So do you think a jury should be instructed that consent is a defense here for McLeod, for Sexton, and for Burke? As to McLeod, McLeod was defaulted and liability was entered as to him. Assume he shows up. Assume he shows up for this whole case. He's entitled to put on a consent defense, you think, under Walton? Well, certainly Walton left open that possibility. The court ultimately declined to adopt any strict balancing test or balancing rule analysis. The court suggested that perhaps the rebuttable presumption approach that has been adopted by other circuits may be the best approach here. So certainly that's a possibility still that under whatever approach the court were to adopt that the defendant or the state could show up and say this was the information that we had, this was the belief that we had as to consent in this case. I would note, in addition, and separately from the request for a new trial, as we argued below and in our briefs, in the alternative, Sexton and Burke would be entitled to judgment as a matter of law under Rule 50 as to qualified immunity because of the fact that in 2025 it was not clearly established that consent could never be relevant in the Eighth Amendment context. The problem, counsel, that I have with that argument is that you seem to be, the question is not relevance there, but at least as I understand the question of qualified immunity, it is whether under the circumstances the defendant faced, the defendant's response was contrary to clearly established constitutional law. And that's where the factual differences between Walton in this case take on, at least in my mind, a great deal of significance. Maybe you could address that. Certainly. I think even if there was a, even if the question ultimately was, did Sexton credibly believe that Doe had consented here? That still could still be a question presented to the jury, allow the jury to answer that question, perhaps in a special interrogatory, and depending on what the answer to that question is… I'm lost. What do you refer to as that question? Whether… Whether the defendants believed something in good faith. Or whether that belief was credible. Well, the problem is, as Judge Hamilton just said, under the Supreme Court's test, qualified immunity does not turn on the subjective beliefs of any party. It turns on the state of the law. It used to be called, back in the early 1980s, good faith immunity. That's pretty much how you're arguing. And then the Supreme Court said in 1987 that good faith has absolutely nothing to do with it. It's only a matter about what does the law provide. So why would their subjective beliefs matter? Well, certainly, Your Honor, in the context of qualified immunity, the general question of qualified immunity as a matter of law, but to the extent there are questions of fact that are relevant to that analysis at all, the question of the credibility of Sexton… But why would their subjective beliefs matter? We can have a debate about how they would be proved if they matter. But why would they matter under the Supreme Court's prevailing test for qualified immunity? It would not matter in the sense that it would not be clearly established that Sexton or Burke here could not have considered consent at all in assessing the potential risk of harm to Doe. I do see that I'm getting into my rebuttal time. If the Court has any further questions. I do, because I was trying to figure out… A prison official who gets this kind of a report has got a tough job, a tough decision to make in the sense that the report may or may not be accurate, may or may not be credible. And if we go the direction you want us to go, it's always going to be possible that the relationship may turn out to have been consensual, at least to some degree, right? I can't speak to every scenario, but I certainly could see that that would be a possibility, yes. And so, and it's also always going to be a crime. So, I'm struggling with it, frankly, as to how you get to qualified immunity here. Well, again, even if this Court were to decide that qualified immunity was not proper here, at the very least a new trial would be warranted to allow the defendants to introduce this evidence of consent. And if I may reserve the rest of my time for rebuttal. Mm-hmm. Certainly, Counsel. Thank you. Ms. Kramer. Yes. Good morning, Your Honors, and may it please the Court. Britt Kramer on behalf of Plaintiff Appellee Jane Doe. I actually want to start where you started, Judge Easterbrook, as to why the appellants sought to introduce consent in this trial. Now, I would like you to start where I started, which is why are you referring to the plaintiff as Jane Doe when her real name is in the public record? And if you look at a transcript of the trial, the name is used over and over and over. How can we pretend that something is a secret when it's public? You need not. This was done by agreement. So we should use the real name. Feel free. Thank you. Speaking to the consent evidence that appellants sought to introduce at trial, I was surprised to hear the government's position today is one they have never raised before, that the consent evidence could have gone to the question of whether Ms. Doe, Andrea Nielsen, actually consented to the sexual abuse she endured while incarcerated at Logan Prison. I'm referring right now to the government's brief, their reply brief. It's document number 78 on this appeal, page 19. The government states, the district court's decision to grant Doe's motion in limine prevented Burke and Sexton from presenting evidence that they believed that Doe had consented to a sexual relationship. That evidence was relevant to Burke and Sexton's defense because it went to their subjective knowledge. Lack of consent was stipulated in this case. It was omitted by the abuser. That admission was never challenged at any point at trial or since. So to be very clear, there is no basis on this record or otherwise that the jury could have concluded there was actual consent here. Critical to recall. Additionally, there are multiple grounds that don't even turn on consent whatsoever for the jury's verdict to be upheld and sustained. At trial, there was ample evidence that Logan was a dangerous and toxic culture for inmates who were incarcerated there like my client, Doe. I wouldn't have any trouble with the evidence if the defendants had been permitted to introduce evidence of consent. But the district judge said, that's completely irrelevant, I will not receive any such evidence. We have to decide... Well, I don't even want to put it that way. Given our later decision in Walton, the district judge's decision was mistaken. So we are back to the question whether the record as a whole, think of this as a summary judgment record, would have permitted a reasonable jury to find consent, not whether the trial record required a finding of consent. So would you just expand your take to the whole record rather than the trial record? I do, Your Honor, I'm including the offers of proof because respectfully, I disagree. There was ample evidence before the Hicks report, the only so-called evidence of consent that has ever been pointed to by the appellants as actually evidencing consent, which again, uncontested, there was no actual consent here. The only evidence of consent that appellants had at the time they made any decision in this case came in December 2016 at the time of the Hicks report. The trial record showed deliberate indifference to my client's constitutional right to be free of sexual assault well before that date. I'll give you some of that evidence now if you would like me to go through it in the record. It is undisputed, undisputed, testified to by the defendants that Logan had a toxic culture where staff did not treat their female inmates with respect. Defendant Sexton testified that many members of Logan's staff, including himself and the female investigator charged with investigating claims of sexual abuse, were themselves having inappropriate, sexually charged relationships with others on site at that prison and during the workday. They testified that sexual harassment ran rampant at Logan and was tolerated. Both defendants, Burke and Sexton, admitted, conceded, undisputed that Logan had known blind spots with no surveillance, including no cameras, and that included the vocational building where my client's assault actually occurred. They noted that these blind spots were quote-unquote hot spots for sexual abuse. They also acknowledged there would be many reasons why prisoners at Logan might not feel that they could report nonconsensual sexual contact given these circumstances, and they conceded that Logan had higher rates of sexual assault and specifically staff on inmate abuse than other IDOC facilities. On this record, there's no dispute of deliberate indifference before the Hicks Report. And by the way, these facts remained true even after there was a credible and detailed report of my client's ongoing abuse in a known sexual hot spot by Defendant McCloud. So those conditions were present at all points, all points before the report, all points after, and they were not remedied. Failure to act is enough to prove deliberate indifference. Supreme Court established that in the Farmer case of 1994, and there's ample evidence of failure to act here. But I would actually like to focus on the ways that Defendant's actions actually increased the risk of sexual assault at Logan Prison. Burke and Sexton both testified and admitted that they knew they were responsible given their roles as the warden and the lead investigator at the prison. To set an example... Have you moved on from the evidence about actual consent? There is no evidence of actual consent. Okay. I understand your position. It's also the government's position. Can I ask you, Ms. Kramer, you all put together, obviously, a powerful case and got a striking verdict, I'll put it that way. And I understood that the damages theory that you all... You put on evidence that would allow the jury to find liability from the beginning and not just after the Hicks report came in, right? That's correct, Your Honor. But those are, in essence, two somewhat different theories of damages. And one of the things that troubles me is the way that the damages issue was presented to the jury in the verdict form as just, in essence, all or nothing on compensatory damages for the entire stretch of McLeod's abuse and rapes of your client. And what I'm troubled by... It seems to me that a jury might reasonably have said no liability up for, at least for Doe and Burke, up to the Hicks report, but certainly after that report. But that possibility doesn't seem to have been accounted for in the way the jury was asked the questions. What am I missing? I appreciate the question, Judge Hamilton. The damages that are the compensatory damages here go to compensating my client for her injury. And that injury is indivisible. It is the trauma that she suffered while being at Logan, both before and after the Hicks report, as a result of the sexual abuse that she was not protected from. We would not treat this as indivisible, for example, for criminal law purposes, right? We don't... If there are multiple, for example, sexual attacks, or non-sexual, for that matter, attacks on a human being, those are punished separately, counted separately, for example, for guideline purposes. I guess I'm having trouble understanding why this would necessarily be indivisible, such that, for example, Doe and Burke are necessarily liable for harm that McLeod inflicted in the several months before the Hicks report was provided. Your point is well taken as to criminal circumstances, but not for tort circumstances, which this is a tort claim. And in those circumstances, you take the victim as you find her. It's an eggshell plaintiff problem. And so what we have here is we had an individual, my client, who had already suffered significant trauma. And I should hasten to say, you don't need to reach this question, because as long as the jury's verdict can be sustained on any theory in the record, you must affirm. And I believe, and I would assert, that the pre-Hicks report information itself is sufficient. But to address your question, in damages, in calculating damages, you take the victim as you find her, you take the injured as you find her, and you look at what the resulting harm was. Here, even if they first were put on notice by the Hicks report, which I submit is not true, but even if you take that as your assumption, this was an already deeply traumatized person who they then failed to prevent from being re-traumatized, deepening that injury, which is an indivisible injury. And Dr. Burgess, who is one of our experts at trial, actually testified to this during the appellant's offer of proof. She explained that it is like if you re-break your ankle, that break is deeper. We find that you're still liable for breaking the ankle in tort law under that circumstance, and you're liable for the harms that actually result from that deeper break. So too here. I'll also note that the defendant, I'm sorry, appellant's concern about the jury verdict is unsupported as well for several reasons, but their complaint is actually about whether there needed to be a date to establish liability. And I would submit that there didn't need to be a date under the indivisible injury facts that were established, but in addition, assuming that there had been a concern about the toxic environment at Logan, yet that is a claim that didn't put the appellants on notice until the Hicks report, that toxic environment itself continued unabated after they got that report, and they continued to do nothing about it. And what the undisputed evidence trial established, defendant Sexton testified to this, there is a special hellish kind of injury for living under the threat of sexual abuse. That injury was present at all times, and that injury persisted after the Hicks report. Both due to the environment in that prison and due to their decision to use my client as bait, instead of taking immediate action to remove her from those dangerous conditions. Ms. Kramer, could you address my concerns about the way that defendants' beliefs that there may have been some issue of consent here would be relevant to punitive damages? I can, Your Honor. So, first of all, I would note that there is no evidence in the record or on appeal at any time, including in every offer of proof, including in the briefing, that Defendant Burke ever formed any subjective belief about consent. So there is no evidence there to show that she had any state of mind that would make her less culpable for her decisions. And in fact, Defendant Burke recognized at trial that she had an independent obligation to intervene to Defendant Sexton's plan to hold my client out as bait. It was her duty to uphold the law. And she knew this plan could re-victimize my client, and she approved it anyway. So as to punitive damages for Defendant Burke, there's literally no argument available. As to Defendant Sexton, his arguments about consent are not that he actually believed that she consented. His argument... And again, that's not a disputed issue in this case. His arguments about consent go to his assertion that his subjective belief about consent somehow altered the duty he had to investigate portions of what he was hearing. Now, this is a really important point, Your Honor, and so I want to direct you to the trial record, 269 at page 129. And I'd encourage you all to go read it because Defendant Sexton stated very clearly, question... And this was under questioning from his counsel.  Does the fact that it appeared to be an agreed-upon relationship affect your evaluation of the emergency nature of the situation? Answer. No. Question. But did it affect whether or not you thought she was in danger of being harmed? When you allowed them to meet so that you could catch them, did that affect whether or not you thought she was in danger of being harmed?  No. This is from the offer of proof? Yes, sir. So the evidence that would have been in the record about consent would not have shown a less culpable state of mind, and it was absolutely appropriate for the trial court to exclude it. You have to have an abusive discretion standard for an exclusion of evidence. Here, that exclusion was entirely appropriate. They were hoping to confuse the issues before the jury as to stipulated consent, as appellants are trying to do even now here today, and that would be far more prejudicial to my client than probative. It was well within the court's discretion to make that conclusion, and you may affirm that conclusion on any basis available on this record.  Thank you. Ms. Chenever, you have 30 seconds. Very briefly, Your Honors. As to counsel's argument that consent evidence would have no relevance as to Burke and punitive damages, that is incorrect. The evidence at trial was that Sexton immediately reported the information to his superiors, including Burke, and based on that information, he was instructed to gather more information, which would allow a jury to infer that there was similarly a belief by Burke that this was a consensual relationship. I see that I'm out of time. For these reasons, we ask this court take you. Thank you. Thank you, counsel. The case is taken under advisement.